# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| UNITED STATES OF AMERICA | CRIM. ACTION NO. 3:24-00072-01 |
|---|---|
| VERSUS | JUDGE TERRY A. DOUGHTY MAG. |
| DELANCEY KENT (01) | JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress [doc. # 24] filed by Defendant Delancey Kent.   For reasons stated below, it is recommended that the motion be DENIED.

## Background

On October 2, 2023, Ouachita Parish Sheriff's Deputy, Joshua Tyler Dooley (hereinafter referred to as, "Dooley" or "Deputy Dooley"), used a confidential source ("CS") to make a controlled buy of 3.5 grams of methamphetamine from Delancey Kent ("Kent") in a monitored transaction that was consummated beneath the carport of a residence located at 1604 Parkview Drive, Monroe, Louisiana.   Relying upon his own personal surveillance of the drug transaction, two video feeds of the encounter captured by electronic monitoring equipment provided to the CS, as well as the methamphetamine produced by the CS after the transaction (which laboratory testing later confirmed was methamphetamine), Deputy Dooley applied for and obtained an arrest warrant for Kent on October 19, 2023.   Agents executed the warrant at the residence the next day, where they also uncovered large quantities of illicit drugs, plus firearms.

On March 27, 2024, a federal grand jury returned a five-count indictment against Kent, charging him with possession with intent to distribute methamphetamine; two counts of possession with intent to distribute controlled substances, to wit:   cocaine and fentanyl; felon in

possession of a firearm; and possession of firearms in furtherance of a drug-trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), 18 U.S.C. §§ 922(g)(1) and 924(c). The indictment also included forfeiture allegations. Kent was arraigned on May 1, 2024, whencoul he entered a plea of not guilty as to all counts.

On July 15, 2024, Kent filed the instant motion to suppress all evidence uncovered pursuant to his October 20, 2023 arrest because it purportedly was obtained in violation of the Fourth Amendment. The Government filed its response to the motion on July 26, 2024, and attached a copy of the October 19, 2023 arrest warrant for Kent and the supporting affidavit. (Gov.'t Response [doc. # 25]).

On September 5, 2024, the Court held a hearing on the motion to suppress. The matter is ripe.

### Relevant Testimony and Documentary Evidence

The lone witness to testify at the hearing was Deputy Dooley, who was called by the Government. The Government also introduced two exhibits at the hearing, both of which represent still images from the video taken during the October 2, 2023 controlled transaction between Kent and the CS. (Exh. List; Gov.'t Exhs. 1-2 [doc. # 32-1]). In addition, as stated previously, the Government submitted a copy of the October 19, 2023 arrest warrant for Kent and the supporting affidavit. (Gov.'t Response, Exh. [doc. # 25-1]).

Deputy Dooley has worked for more than ten years with the Ouachita Parish Sheriff and currently serves as a metro narcotics task force agent, in cooperation with the Drug Enforcement Administration. During his tenure, Dooley has investigated hundreds of narcotics cases.

Dooley began an investigation of Kent after law enforcement received information that he was selling narcotics in Ouachita Parish. Agents previously met with a CS, who told them

that he or she could purchase narcotics from Kent.[1]    On October 2, 2023, agents met with the CS, who had made prior arrangements with Kent to purchase methamphetamine.    As far as Dooley is aware, this instance marks the only occasion that the CS has been involved in a controlled buy.    Prior to the controlled buy, agents searched the CS and the CS's vehicle to ensure that the CS did not possess any contraband.    Agents provided the CS with marked funds ($50) for the purchase and equipped him or her with two electronic monitoring devices, one of which transmitted a livestream for the CS's safety.

Five agents followed the CS to Kent's residence.    Prior to the surveillance, agents had familiarized themselves with Kent's appearance, and one agent had arrested Kent previously. Dooley positioned himself northeast of the residence from where he was able to observe the carport side of the residence.    Dooley saw the CS make contact with Kent, consummate the transaction, and then depart.    Two unidentified males also were present during the transaction, one who was sitting outside and one who exited the house.    Dooley did not see anything to suggest that the other two males were involved in the controlled purchase.

The agents followed the CS from Kent's residence to a neutral location, where the agents searched the CS and the vehicle and retrieved the monitoring equipment, together with the suspected methamphetamine that the CS had purchased.    The CS had no other controlled substances and no longer possessed the funds that the agents had provided him or her for the drug purchase.

After the buy, Deputy Dooley reviewed the video footage from the monitoring equipment.    Although the video did not capture the hand-to-hand transaction between the CS and Kent, it did depict Kent's face and body.    A still image from the video shows Kent

---

[1] Another agent had obtained corroborating information from an independent source that Kent was selling narcotics.

approaching the CS from beneath the carport.   (Gov.'t Exh. 1).   In the image, it appears that Kent is grasping a small object between his thumb and fingers in his right hand.   *Id*.   A second still image shows a close-up of Kent's face from below.   (Gov.'t Exh. 2).

Deputy Dooley sent the item purchased in the controlled buy to a laboratory for testing, where it was confirmed to be methamphetamine.   Thereafter, Dooley applied for, and obtained a warrant for Kent's arrest.

In the arrest warrant affidavit, Dooley stated that the CS had talked to Kent and arranged to purchase 3.5 grams of methamphetamine for $50.00.   (Affid. for Arrest Warrant; Gov.'t Response, Exh. [doc. # 25-1]).   The affidavit further confirmed that, both prior to, and after the controlled buy, Agents Russell and Cowan searched the CS and the CS's vehicle to ensure that there were no weapons or extraneous contraband.   *Id*.   Dooley also provided the CS with electronic monitoring equipment, so the transaction could be monitored and recorded.   *Id*.

At 14:57, on October 2, 2023, agents observed Kent exit the residence at 1604 Parkview Drive, Monroe, Louisiana, where he made contact with the CS beneath the carport and exchanged 3.5 grams of suspected methamphetamine for the agency-provided funds.   *Id*.   The residence is located within 770 feet of Wossman High School.   *Id*.

On October 3, 2023, Dooley submitted the suspected methamphetamine to the North Louisiana Criminalistics Laboratory ("NLCL") for analysis.   *Id*.   On October 18, 2023, Dooley received a report from the NLCL confirming that the substance purchased from Kent was methamphetamine.   *Id*.

On October 19, 2023, the Honorable Larry D. Jefferson of the Fourth Judicial District Court issued a warrant for Kent's arrest for distribution of CDS II (methamphetamine) and for violation of a drug free zone in violation of Louisiana Revised Statutes §§ 40:967 and 981.3, respectively.   (Arrest Warrant).

4

Because Kent was on probation for a prior narcotics offense, Deputy Dooley contacted probation and parole, so they could accompany him to the subject residence on October 20, 2023, to execute the arrest warrant.   Agents knocked on the door of the residence and took Kent into custody.   Probation and parole officers then entered the residence where they observed a large amount of narcotics in plain view.   The agents obtained a search warrant for the residence, which resulted in the discovery of large amounts of marijuana, methamphetamine, cocaine, ecstasy, and prescription pills, plus firearms and currency.

After advising Kent of his *Miranda* rights, agents interviewed Kent, who then admitted to selling narcotics to help pay his bills.   He further admitted that he had purchased firearms about one to two years earlier for safety reasons.

## Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ."   U.S. CONST. AMEND. IV.[2]   "The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution."   *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights."   *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted).

---

[2] The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207; 99 S.Ct. 2248, 2253 (1979) (citation omitted).

Evidence obtained in violation of the Fourth Amendment is generally excluded and "cannot be used in a criminal proceeding against the victim of the illegal search or seizure." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).   The purpose of this exclusionary rule is to deter unlawful police conduct.   By refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). The exclusionary rule requires the suppression of evidence that is seized pursuant to a warrant unsupported by probable cause.   *Pope*, 467 F.3d at 916 (citation omitted).   Nonetheless, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

In *Franks v. Delaware*, the Supreme Court held an officer violates the Fourth Amendment if he or she deliberately or recklessly provides false information necessary to secure an "arrest" warrant.   *Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022) (citing, *inter alia*, *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).[3]   Furthermore, a *Franks* violation may occur when an officer makes "knowing and intentional *omissions* that result in a warrant being issued without probable cause . . . " *Id*. (citation omitted)).

In *United States v. Ortega*, the Fifth Circuit recognized that,

[u]nder the Supreme Court's decision in *Franks*, a . . . warrant must be voided if

---

[3] Although the *Franks* case arose in the context of a *search* warrant, its rationale extends to arrest warrants.   *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021).

6

> the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause.

*United States v. Ortega,* 854 F.3d 818, 826 (5th Cir. 2017) (citing, *inter alia*, *Franks*, 438 U.S. at 155–56).

Traditionally, a motion to suppress evidence discovered pursuant to a search warrant is analyzed under a two-step process. *United States v. Sibley*, 448 F.3d 754, 757-758 (5th Cir. 2006) (citation omitted). First, the court must decide whether the good-faith exception to the exclusionary rule applies. *Id.*[4] If this good faith exception applies, then the inquiry ends. *Gibbs*, 421 F.3d at 357 (citation omitted). If the good-faith exception does *not* apply, then the court must proceed to the second step of the analysis to determine whether the warrant was supported by probable cause. *Gibbs*, 421 F.3d at 357. The same process applies to arrest warrants. *See United States v. Blevins*, 755 F.3d 312, 324–25 (5th Cir. 2014) (citation omitted).

In *Ortega*, however, the Fifth Circuit explained that the *Franks* inquiry effectively consists of three questions, all of which must be met: "First, does the affidavit contain a false statement? Second, was the false statement made intentionally or with reckless disregard for the truth? And third, if the false statement is excised, does the remaining content in the affidavit fail

---

[4] "'The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded.'" *Sibley*, 448 F.3d at 757 (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002)). Because the exclusionary rule is designed to deter misconduct rather than to punish the errors of judges and magistrates, "[e]vidence obtained during the execution of a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted). The government bears the burden of demonstrating that the good faith exception applies. *United States v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985).

to establish probable cause?"   *Ortega*, 854 F.3d at 826 (internal citations omitted).

Under a *Franks* analysis, "material omissions are treated essentially similar to claims of material misstatements."   *United States v. Gonzalez*, Civ. Action No. 18-0482, 2018 WL 6174202, at *7 (S.D. Tex. Nov. 7, 2018), *R&R adopted,* 2018 WL 6173724 (S.D. Tex. Nov. 26, 2018) (citations omitted).   Moreover, the defendant must show more than mere "negligence or innocent mistake" by the affiant.   *United States v. Ortega*, 719 Fed. App'x. 319, 323–24 (5th Cir. 2018) ("*Ortega II*") (citations omitted).   However, "recklessness may be shown circumstantially 'when reasons to doubt [the] information's veracity are obvious.'"   *Id*. at 324-25 (citations omitted).

"[P]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   *Michigan v. DeFillippo*, 443 U.S. 31; 99 S.Ct. 2627, 2632 (1979) (internal quotation marks omitted).   In so deciding, "courts must look to the totality of the circumstances and decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer demonstrate a probability or substantial chance of criminal activity."   *Terwilliger*, 4 F.4th at 282 (citing *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 586 (2018) (quotation marks omitted).

Further, when reviewing a warrant that is premised upon a confidential informant, the "informant's veracity, reliability and basis of knowledge [represent] important factors . . ." but, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."   *United States v. Jackson*,

818 F.2d 345, 348 (5th Cir. 1987) (citation omitted).   In other words, "[w]hen an affiant relies upon information obtained from an informant, the affiant must provide sufficient information to allow the magistrate to determine, by reviewing the totality of the circumstances, whether the informant's information is sufficient to create probable cause."   *United States v. Brown*, 567 Fed. App'x. 272, 282 (5th Cir. 2014) (citation omitted).

## Analysis

In this case, Kent contends that Deputy Dooley's application for an arrest warrant was misleading because it failed to disclose that there were three men at the residence during the brief period that the CS was onsite and because the electronic monitoring equipment failed to capture which person gave the drugs to the CS.   Furthermore, the electronic monitoring equipment did not record any incriminating dialog.   Kent also theorized that, because of the layout of the carport in relation to the door to the house, it would have been nearly impossible for an officer surveilling the house to view the transaction, as required to corroborate the CS's account.   This omission, according to Kent, proves critical because the affidavit otherwise does not provide any information regarding the CS's reliability.

Upon consideration, the Court is compelled to resolve all three of the *Ortega* questions against Kent and in favor of the Government, essentially because of the same uncontested fact: Deputy Dooley personally observed the transaction between the CS and Kent.   In his motion, Kent speculated that agents might not have been able to view the transaction from their vantage point.   However, consistent with his statement in the affidavit, Dooley unequivocally testified, at that hearing, that he observed the transaction.   Moreover, the still image from the video supports Dooley's account as it depicts Kent walking towards the CS with something in his right hand.

When the foregoing evidence is combined with the additional uncontroverted fact that a search of the CS before the transaction revealed no controlled substances, but, after the encounter, the CS produced a substance that later tested positive for methamphetamine, there was more than sufficient probable cause to support Kent's arrest.  *See United States v. Roman*, 813 Fed. App'x. 972, 973 (5th Cir. 2020) (officers had probable cause for arrest when they observed the defendant engage in a drug transaction with the CI in open view).

The alleged omissions in the warrant affidavit identified by Kent do not undermine the foregoing facts.   Therefore, they prove immaterial.   The presence of other individuals beneath the carport and the inconclusive nature of the video and audio equipment lose their significance in the wake of Dooley's personal observations.   Furthermore, the reliability of the CS's veracity and reliability were corroborated by Dooley's unimpeached supervision of the controlled buy.

Even if the alleged omissions *were* material, there is no evidence that Dooley intentionally or recklessly excluded the information in an attempt to mislead the judge.   As stated above, the omitted details do not undermine Dooley's uncontroverted personal observation of the transaction, which, alone, supports probable cause for issuance of the arrest warrant. Moreover, as the Government noted in his brief, Kent was on probation for another drug offense at the time of his arrest, and, consequently, law enforcement had a reasonable suspicion that drug transactions were being consummated at Kent's residence.   Of course, "[t]he Supreme Court has held that a warrantless non-consensual search of a probationer's residence on the basis of a reasonable suspicion does not violate the Fourth Amendment."   *United States v. Washington*, 15-CR-00070-01, 2015 WL 10490548, at *4 (W.D. La. Nov. 18, 2015), *R&R adopted,* 2016 WL 1071109 (W.D. La. Mar. 16, 2016) (citations omitted).   The same rule also supports the

probation officer's entry into the residence at the time of Kent's arrest, and the concomitant discovery of large amounts of narcotics in plain view.   *See Blevins*, 755 F.3d at 325 (discussing discovery of evidence in plain view pursuant to protective sweep even after the suspect's arrest).

In the end, the Court finds that Kent has not established that the physical evidence seized in the investigation of this matter was obtained in violation of his Fourth Amendment rights. *See Gibbs*, 421 F.3d at 359 ("an officer may rely in good faith on an issued-warrant based on an affidavit describing a single drug buy conducted by a confidential informant supervised by the affiant officer") (citations omitted); *Blevins*, 755 F.3d at 324-325 (defendant does not explain how failing to provide the judge with the videotape which did not fully capture the actual transaction of the drugs would have undermined the testimony of the agent, who kept the CI under surveillance, even at the convenience store, and received the fruits of the transaction following the CI's purchase).

Apart from seeking suppression of all evidence gathered after the issuance of the arrest warrant as "fruit of the poisonous tree, Kent's motion does not otherwise address the suppression of any incriminating statements.   In addition, Kent does not contend that any of his statements, all of which were uttered post-*Miranda,* were not freely and voluntarily made.   Having found that the arrest warrant was supported by probable cause, and in the absence of any apparent *Miranda* or constitutional violations, the Court necessarily concludes that there is no basis to suppress any of Kent's statements. *United States v. Needham*, Cr. No. 11-185, 2011 WL 13124280, at *8 (W.D. La. Oct. 26, 2011), *aff'd,* 546 Fed. App'x. 353 (5th Cir. 2013).

## <u>Conclusion</u>

For the above-stated reasons,

11

IT IS RECOMMENDED that the motion to suppress [doc. # 24] filed by Defendant Delancey Kent be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 18th day of September, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE