UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:24-CR-00072** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DELANCEY KENT** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Indictment [Doc. No. 51] filed by Defendant Delancey Kent ("Kent"). An Opposition [Doc. No. 53] was filed by the United States (the "Government"), and Kent filed a Reply [Doc. No. 54].

For the reasons set forth below, Kent's Motion is **DENIED**.

### I. BACKGROUND

On October 20, 2023,[1] Delancey Kent was arrested for possessing firearms and ammunition after having previously been convicted of at least two felony offenses.[2] On March 27, 2024, a federal grand jury returned a five-count Indictment against Kent.[3] Count One charges Possession with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); Counts Two and Three charges Possession with Intent to Distribute Controlled Substances

---

[1] Kent's Motion to Dismiss states that he was arrested on October 10, 2023. [Doc. No. 51, p. 1]. However, the Indictment [Doc. No. 1] and the Government's Opposition to the pending Motion [Doc. No. 53] indicates that he was arrested on October 20, 2023. Although the Court wishes to note the discrepancy, it has no bearing on the merits of the Motion.

[2] [Doc. No. 53, p. 2]. The prior felony offenses include (1) a September 2011 conviction of Possession with Intent to Distribute Marijuana where he was sentenced to eight (8) years of hard labor; and (2) a May 2022 conviction of Possession of Methamphetamine where he was sentenced to three (3) years of hard labor.

[3] [Doc. No. 1].

in violation of 21 U.S.C. § 841(a)(1); Count Four charges Felon in Possession of Firearms in violation of 18 U.S.C. § 922(g)(1); and Count Five charges Possession of Firearms in Furtherance of a Drug-Trafficking Crime, in violation of 18 U.S.C. § 924(c).[4]

Kent filed the pending Motion seeking to dismiss Count Four of the Indictment on February 27, 2025.[5] In essence, Kent claims that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him and must be dismissed unless the Government demonstrates that the Nation of the United States has a longstanding tradition of disarming someone with a criminal history analogous to him.[6] The Government opposes the Motion and alleges that Kent is the type of "dangerous" person the Second Amendment excludes and applying § 922(g)(1) to Kent is squarely consistent with this Nation's historical tradition of firearm regulation.[7]

The issues have been briefed and the Court is prepared to rule.

## II. LAW & ANALYSIS

### A. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. (12)(b)(1). Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense." *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2

---

[4] [Id.].
[5] [Doc. No. 51].
[6] [Id., p. 4]
[7] [Doc. No. 53, p. 9].

(E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)) (cleaned up). A court may resolve such defects before trial when the motion presents a question of law. *See United States v. Fontenot,* 665 F.3d 640, 644 (5th Cir. 2011). The central issue here falls squarely within that ambit—whether § 922(g)(1) is unconstitutional as applied to Kent.

### B. Kent's Motion

Kent claims that he is protected by the Second Amendment, and § 922(g)(1) infringes upon his fundamental right to possess and use a firearm for personal protection and defense.[8] The statute prohibits any person who has been convicted of a felony to ship, transport, possess, or receive firearms or ammunition via interstate or foreign commerce. 18 U.S.C. § 922(g)(1). Kent principally relies on the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024).[9] Kent also points to *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which illustrates the framework lower courts must apply to "as-applied" challenges to charges brought under § 922(g)(1).[10] Thus, Kent argues that the statute is unconstitutional, as applied, unless the Government satisfies its burden of demonstrating that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to him.[11]

---

[8] [Id.].
[9] [Id., p. 2].
[10] [Id., p. 2-3].
[11] [Id., p. 4].

3

### C. The Second Amendment

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court read this language to "protect the right of law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 635 (2008).[12] However, the Court made clear that the right is not unlimited. *Id*. at 626.

The Court established a two-step framework for Second Amendment constitutional challenges in *Bruen*. 597 U.S. at 19-24. First, courts must consider whether "the Second Amendment's plain text covers an individual's conduct." *Id*. at 24. If so, "the Constitution presumptively protects that conduct," and the Government must bear the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.[13] However, the Government must only point to a "well-established and representative historical analogue, not a historical twin." *Id*. at 30. In assessing similarity, courts should look to "whether modern and historical regulations impose a comparable burden on the

---

[12] Indeed, the right the Second Amendment sought to protect likely existed far before the ratification of the Bill of the Rights. Several provisions in the Bill of Rights were "understood as declaratory, inserted simply out of an abundance of caution to clarify pre-existing constitutional understandings." Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 28 (1998).

[13] The purpose of the two-step framework is straightforward: the Court sought to expressly reject any "judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Bruen*, 597 U.S. at 22 (cleaned up); *cf. Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1261 (11th Cir. 2022) (Newsom, J., concurring) ("[U]nelected, unaccountable federal judges shouldn't make stuff up.").

right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.

### D. The Constitutionality of § 922(g)(1) as Applied to Kent

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear that felons are among "the people" protected by the Second Amendment. *Diaz*, 116 F. 4th at 466-467. Thus, the first part of the analysis stops there.

Next, the Court must consider whether any historical examples "impose a comparable burden on the right of armed self-defense" during the Second Amendment's ratification. *Bruen*, 597 U.S. at 27. Kent's pertinent criminal history includes multiple possession and intent to distribute drug offenses.[14] Thus, the Government must show that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Kent's. *Diaz*, 116 F. 4th at 467. Importantly, the historical examples discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals that may pose a risk of violence or otherwise threaten public safety. *See id.* at 469.[15] In other words, the analogs demonstrate a "tradition of firearm regulation" which allows the "Government to

---

[14] [Doc. No. 53, p. 2].
[15] The Fifth Circuit in *Diaz* made at least three distinct and relevant points. First, the Fifth Circuit explained that historical laws which authorized capital punishment and estate forfeiture following felony convictions were "justified by the need to adequately punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Diaz*, 116 F. 4th at 469. Second, state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* Finally, the *Diaz* court considered the Supreme Court's finding in *Rahimi* that "going armed punished those who had menaced others with firearms because such actions disrupted the public order and led almost necessarily to actual violence." *Id.* at 470 (cleaned up).

disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700.

Here, Kent's prior drug-related felonies establish the requisite nexus to public safety. And the Government has sufficiently carried its burden under *Bruen* to show a longstanding tradition of regulating someone with a criminal history analogous to Kent.

First, the Government compares Kent's prior drug-related felony convictions to Founding-era laws, which criminalized receipt, possession, and the trafficking of illicit contraband and subsequently permitted the dispossession of firearms.[16] For instance, the Government explains that Virginia historically allowed the death penalty for the crime of knowingly receiving a stolen horse,[17] that the Second Congress authorized capital punishment for the theft of mail,[18] and that several states permitted a similar punishment for the counterfeiting and forgery of public securities.[19] In other words, if a death sentence was permissible to respond to possessing contraband, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Wilson*, 2024 WL 4436637 at 4 (citing *Diaz*, 116 F.4th at 469). Thus, the Founding-era laws cited by the Government sufficiently qualify as "relevant evidence" that shows our country has a historical tradition of

---

[16] [Doc. No. 53, p. 8].
[17] [Id.]; 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819).
[18] [Id.]; *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792).
[19] [Id.]; *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790).

severely punishing people like Kent who have been convicted of possessing contraband. *Diaz*, 116 F.4th at 469.

Next, the fact that the Government did not point to Founding-era laws prohibiting drug possession is not dispositive. *Wilson*, 2024 WL 4436637 at 4. Again, the Government only needs to find a "historical analogue, not a historical twin." *Bruen*, 597 U.S. at 30. And it has done so. Moreover, Kent clearly falls into the category of those who "present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993).[20] Thus, the Second Amendment does not preclude the enforcement of § 922(g)(1) to Kent.

Finally, this Court is not alone in holding § 922(g)(1) constitutional as applied to defendants with prior convictions resembling Kent's criminal history. *See, e.g., United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding § 922(g)(1) constitutional as applied to a defendant with prior drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (same); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (same); *United States v. Landrum*, No. 3:24-CR-63-DPJ-LGI, 2024 WL 4806486, at 1 (S.D. Miss. Nov. 15, 2024) (same); *United States v. Patino*, No. 24-CR-60-DC, 2024 WL 5010146, at *7

---

[20] Federal appellate courts have largely agreed that drug dealing is "notoriously linked to violence." *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); *see also, e.g., United States v. Barton*, 633 F.3d 168, 174 (3d. Cir. 2011)" [O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business.").

(W.D. Tex. Nov. 26, 2024) (same). Nor is the list of examples exhaustive. Those courts reason, as the Court does here, that guns and drugs are a dangerous combination that raises the risk of violence, and Congress has traditionally addressed that risk by dispossessing long-time drug offenders of firearms. *Wilson*, 2024 WL 4436637 at 5.

Therefore, Kent's as-applied challenge fails because the Government has met its burden to show that applying § 922(g)(1) to Kent is consistent with the principles that underpin our Nation's tradition of firearm regulation.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Kent's Motion [Doc. No. 51] is **DENIED**.

MONROE, LOUISIANA, this 31st day of March, 2025.

Terry A. Doughty
United States District Judge